UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HOLLY MEAD,

                        Plaintiff,

v.                                                                                                   5:11-CV-0245
                                                                                               (GTS)
MICHAEL J. ASTRUE, Comm'r of Soc. Sec.,

                        Defendant.
_____

APPEARANCES:                                                                 OF COUNSEL:

OLINSKY LAW GROUP                                                   HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State Street
5th Floor, Suite 520
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                               JEREMY A. LINDEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court, in this Social Security action filed by Holly Mead ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 10, 14.) For the reasons set forth below, Defendant's motion is granted in part and denied in part, and Plaintiff's motion is granted in part and denied in part.

**I.      RELEVANT BACKGROUND**

    **A.      Factual Background**

Plaintiff was born on December 4, 1968. She completed education through the 12th grade, as well as some vocational training. During her life, Plaintiff has worked as an assistant manager, assistant head cashier and sales associate. Generally, her alleged disability consists of fibromyalgia, Marfan syndrome, asthma, Christmas disease, depression, anxiety, borderline bipolar disorder, dual personality disorder and Post Traumatic Stress Disorder ("PTSD"). Her alleged disability onset date is February 25, 2007, and her date last insured is March 31, 2012.

    **B.      Procedural History**

On June 28, 2007, Plaintiff applied for Social Security Disability Insurance and Supplemental Security Income. Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On September 16, 2009, Plaintiff appeared before the ALJ, John S. Pope. (T. 26-53.) The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on November 12, 2009. (T. 11-25.) On January 6, 2011, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-5.) Thereafter, Plaintiff timely sought judicial review in this Court.

    **C.      The ALJ's Decision**

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 13-20.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (T. 13.) Second, the ALJ found that Plaintiff's Marfan's syndrome, Christmas disease, fibromyalgia, asthma, substance addiction and

2

depression are severe impairments. (*Id.*) Third, the ALJ found that Plaintiff's mental impairments did not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 13-15.) The ALJ considered listings 12.04 and 12.09. (*Id*.) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work, except that she can only occasionally climb ramps and stairs, stoop, crouch and crawl; and can frequently balance and kneel. (T. 15-19.) In addition, he found that Plaintiff must avoid concentrated exposure to extreme heat, extreme cold, noise and pulmonary irritants, and that she is limited to unskilled work. (*Id*.) Fifth, and finally, the ALJ determined that Plaintiff is unable to perform her past relevant work, but that there are jobs that exist in the national economy that she can perform. (T. 19-20.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes five separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred in failing to develop the record when he did not obtain treatment notes from the Cortland County Mental Health Clinic. (Dkt. No. 10 at 14-16 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ erred in making his RFC finding without first conducting a function-by-function analysis. (*Id.* at 16-17.) Third, Plaintiff argues that the ALJ erred when he failed to follow the treating physician rule. (*Id.* at 17-23.) Fourth, Plaintiff argues that the ALJ erred when he failed to apply the appropriate legal standards in assessing her credibility. (*Id.* at 23-24.) Fifth, and finally, Plaintiff argues that the ALJ erred in relying on the vocational expert's testimony to support his finding that Plaintiff is not disabled. (*Id.* at 24-25.)

### B. Defendant's Arguments

In response, Defendant makes five arguments. First, Defendant argues that the ALJ properly evaluated the opinions of treating sources in determining Plaintiff's RFC. (Dkt. No. 14 at 10-19 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly performed a function-by-function analysis when he concluded that Plaintiff had the RFC for light work, which encompasses certain functions. (*Id.* 19-20.) Third, Defendant argues that the ALJ properly assessed Plaintiff's credibility. (*Id.* at 17-19.) Fourth, Defendant argues that the ALJ properly developed the record for the twelve month period preceding Plaintiff's application. (*Id.* at 22-24.) Further, Defendant notes that contrary to Plaintiff's assertion, the missing evidence she cites does not fall into that time period. (*Id.*) Fifth, and finally, Defendant argues that the ALJ properly determined that there were jobs in the national economy that Plaintiff could perform. (*Id.* at 25.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according

to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

### IV. ANALYSIS

#### A. Whether the ALJ Erred in Failing to Obtain Treatment Records from the Cortland County Mental Health Clinic

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 10 at 14-16 [Pl.'s Mem. of Law].) The Court would only add the following analysis.

Plaintiff argues that the ALJ failed to meet his affirmative duty to fully develop the record when he did not obtain her records from the Cortland County Mental Health Clinic for the period from at least March 27, 2007, through May 3, 2009. Defendant responds that the ALJ met his obligation to develop Plaintiff's medical history for the twelve months preceding the month in which she filed her application for benefits (i.e., June 2007). (Dkt. No. 14 at 22 [Def.'s.'s Mem. of Law, citing 20 C.F.R. §§ 404.1512(d), 416.912(d)].) In addition, Defendant responds that Plaintiff failed to identify the Cortland County Mental Health Clinic as a treating source, and in any event, the ALJ had sufficient documentation before him in order to render a disability determination. Finally, Defendant responds that the record reflects only that Plaintiff went to an unnamed mental health clinic on and off from March to July 2009.

The record includes notes from Plaintiff's treating physician, Cindy Johnson, M.D., at Cortland Medical Associates ("CMA"), which indicate that, first on March 27, 2007, and then April 3, 2007, Plaintiff reported that she "was hospitalized at CMH in Feb[ruary] for [a] nervous breakdown" and that she "[w]as discharged on [P]rozac." (T. 214, 217.) On March 27, 2007, Dr. Johnson also noted that Plaintiff was "not currently seeing a psychiatrist, but is involved with the mental health clinic." (T. 214.) Later notes from Dr. Johnson documenting Plaintiff's treatment on March 10, 2009, and May 18, 2009, indicate that Plaintiff is "going to mental health clinic and was told she has PTSD, dual personality, and borderline bipolar (sic)." (T. 419, 425.) In addition, a May 4, 2009, report from the Emergency Room at Cortland Regional Medical Center reflects that Plaintiff is "already being followed by Cortland County Mental Health Clinic." (T. 553.) Finally, the record includes additional notes from Dr. Johnson in June and July 2009 reflecting that Plaintiff was going to a "mental health clinic" and was told she has

"PTSD, dual personality, and borderline bipolar (sic) . . . [but she] cannot go back because she missed too many app[ointments]." (T. 433, 437.)

It should be noted that Plaintiff was hospitalized at Cortland Regional Medical Center, formerly known as Cortland Memorial Hospital, for psychiatric issues from February 27, 2007, through March 2, 2007. (T. 526.) Records from that hospitalization indicate that Plaintiff reported no prior psychiatric inpatient history (T. 262, 541), and that Plaintiff was discharged on Prozac (T. 261). Accordingly, Dr. Johnson's reference to Plaintiff's reported hospitalization at "CMH" for "[a] nervous breakdown" undoubtedly meant Cortland Memorial Hospital, and not the Cortland County Mental Health Clinic.

Nonetheless, it appears from that record that Plaintiff received some psychiatric treatment from a mental health clinic as far back as March 2007 through at least May 2009. Moreover, a May 2009 treatment record from Cortland Regional Medical Center reflects that Plaintiff was being treated at the Cortland County Mental Health Clinic at that time. Moreover, at the hearing, Plaintiff testified that she is borderline bipolar and has depression and anxiety. (T. 38.) Plaintiff also testified that a mental health counselor told her she has a dual personality but "I don't see that." (*Id.*)

To be sure, Plaintiff did not include the Cortland County Mental Health Clinic as a treating source in her application materials, nor did she mention it at her hearing. (T. 127-129; 26-53.) Also, both prior to and during the hearing, the ALJ asked Plaintiff whether there was any additional evidence to be submitted; however, the records from the Cortland County Mental Health Clinic were not identified or produced by Plaintiff. (T. 29, 52.) Moreover, in her memorandum to the Appeals Council, Plaintiff never mentioned, nor did she provide, the records

8

from the Cortland County Mental Health Clinic. (T. 177-188.) Still, it is well established that, in light of the non-adversarial nature of Social Security proceedings, the ALJ has an obligation to affirmatively develop the claimant's medical history where there are deficiencies in the record, even where, as here, a claimant is represented by counsel. *See Johnson v. Astrue*, 811 F. Supp. 2d 618, 629 (E.D.N.Y. 2011 ) (citing *Tejada v. Apfel*, 167 F.3d 770, 774 [2d Cir.1999]; *Rosa v. Callahan*, 168 F.3d 72, 79 [2d Cir.1999]).

Plaintiff argues that the ALJ's failure to decide whether her PTSD, dual personality and borderline bipolar disorder were severe impairments at step one of the sequential evaluation rendered his decisions at the remaining steps unsupported by substantial evidence. Defendant responds that the ALJ had sufficient documentation before him in order to render a disability determination. However, the question is not whether the ALJ's determination, based on the current record, was supported by substantial evidence. Instead, the question is whether the record upon which the ALJ relied in rendering his decision was fully developed. Given Plaintiff's testimony regarding her diagnoses of borderline bipolar and dual personality disorder, the ALJ had a duty to develop the medical history in that regard, including seeking Plaintiff's records from the Cortland County Mental health Clinic. For this reason, remand is appropriate.

However, the Court finds the ALJ's determinations at steps four and five, based on the current record, to be supported by substantial evidence. Accordingly, the ALJ's decision is affirmed in those regards, subject to his findings on remand after further development of the record, in accordance with this Decision and Order.

### B. Whether the ALJ Erred in Failing to Conduct a Function-by-Function Analysis Before Determining Plaintiff's RFC

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 19-20 [Def.'s Mem. of Law].) The Court would only add the following analysis.

Here, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work, except that she can only occasionally climb ramps and stairs, stoop, crouch and crawl; and she can frequently balance and kneel. In addition, the ALJ found that Plaintiff must avoid concentrated exposure to extreme heat, extreme cold, noise and pulmonary irritants; and that Plaintiff is limited to unskilled work. (T. 15-19.)

Social Security regulations explain light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b). When assessing RFC, "the ALJ must first identify the individual's functional limitations or restrictions and then assess his or her work-related abilities on a function-by-function basis." *Henry v. Astrue*, 10-CV-0109, 2012 WL 1657186, at *11 (N.D.N.Y. Mar. 22, 2012) (Bianchini, M.J.) (citing SSR 96-8p, 1996 WL 374184, at *1 [S.S.A. Jul. 2, 1996]), *adopted*, 2012 WL 1657377 (N.D.N.Y. May 10, 2012) (Kahn, J.). "Specifically, the ALJ must make a function-by-function assessment of the claimant's ability to sit, stand,

walk, lift, carry, push, pull, reach, handle, stoop, or crouch, based on medical reports from acceptable medical sources that include the sources' opinions as to the claimant's ability to perform each activity." *Id.*  Next, the ALJ may express RFC in terms of exertional level, such as, light, medium, heavy, or very heavy. *See id.*

Here, in determining Plaintiff's RFC, the ALJ relied primarily on Plaintiff's testimony as well as the opinions of the State Agency Medical Consultants and Consultative Examiners.  The ALJ considered the opinion of Plaintiff's treating cardiologist and gave it little weight.  The ALJ noted that no other medical sources offered opinions regarding Plaintiff's functional capacity.

The ALJ found Plaintiff "only partially credible regarding her capacity to lift, walk, sit and stand," noting that her allegations of being extremely limited in those functions is inconsistent with her statement of daily activities.  (T. 17.)  Plaintiff "testified that she can lift ½ gallon of milk, and in an 8-hour work day could: walk about 1 hour; stand about 1 ½ hours; and sit for about 2 hours, but would need to stand once in a while."  (*Id.*)  The ALJ noted that Plaintiff's testimony that she is able to complete the tasks of cooking, cleaning, grocery shopping and laundry "is a strong indicator of [her] ability to lift more than ½ gallon of milk."  (*Id.*)  In addition, the ALJ noted that Plaintiff's ability to attend AA meetings, breakfast outings and medial appointments as well as her ability to spend several hours each day doing bead work, watching television and playing cards indicates a capacity for significant amounts of walking, standing and sitting.  (*Id.*)

Regarding her mental impairments, Plaintiff testified that she "has little interest or pleasure; feels down; and 2-3 times per month she won't get out of bed, shower or get dressed."  (*Id.*)  Plaintiff further testified that she "has difficulties concentrating and sleeping; feels

11

fatigued; sometimes doesn't eat and feels like she can't do anything." (*Id.*)  The ALJ also found Plaintiff only partially credible regarding her psychological impairments, noting her allegations regarding her limitations in this area were inconsistent with her alleged social interactions, hobbies, and other activities of daily living.  (T. 18.)

The ALJ also considered medical evidence in determining Plaintiff's RFC, giving great weight to the opinions of consultative examiners, Dr. Kalyani Ganesh, Kristen Barry, Ph.D. and Dr. T. Harding, as well as "State Agency Medical Consultant Dr. C. Sejan[.]"  (*Id.*)[1]  The ALJ noted that Dr. Ganesh found Plaintiff had no limitations to sitting, standing or walking but should avoid heavy lifting, carrying, pushing and pulling.  (*Id.*)  Dr. Barry found that Plaintiff "was able to follow and understand simple directions and instructions, was able to maintain attention and concentration fairly well; and has been able to perform complex tasks independently and does demonstrate the ability to learn new tasks."  (*Id.*)  Dr. Harding opined that, although Plaintiff shows signs of an affective disorder, "she can maintain attention and concentration for 2 hour intervals; can maintain a normal work day/work week; and can maintain a consistent pace."  (T. 18-19.)  Dr. Harding further found that Plaintiff "is able to use judgment and make work-related decisions; is able to set goals and make plans independently; is able to respond appropriately to supervisors and co-workers and sustain close interaction with the general public; and respond appropriately to changes in a routine work setting."  (T. 19.)

---

[1] As Defendant admits, the ALJ should not have given great weight to the opinion of C. Sejan, because he or she is a disability examiner and is not a doctor. (Dkt. No. 14 at 15-16 [Def.'s Mem. of Law].)  However, Defendant argues, and the Court agrees, that this error is harmless, because the ALJ also relied on Dr. Ganesh's opinion, which is well supported by her examination findings and is consistent with the record as a whole, to determine Plaintiff's physical RFC.  (*Id.*)

The ALJ went on to note the opinion of Plaintiff's treating cardiologist that Plaintiff is limited to "walking 2 blocks before needing to rest; sitting for 30 minutes before needing to get up; and avoiding all exposure to extreme heat and cold, wetness, humidity, fumes and hazards." (T. 19.)  The ALJ explained that he assigned little weight to Dr. Carhart's opinion, "because it is inconsistent with the medical evidence of record, including his own treatment notes, particularly notes following an EKG in 2007, in which he noted . . . normal left ventricular systolic function and that the echocardiogram was normal." (*Id.*)

Thus, while Plaintiff baldly claims that the ALJ failed to address her abilities on a function-by-function basis, in fact the ALJ considered each function and explained his reasoning based on evidence in the record.  Accordingly, the ALJ's decision is affirmed in this regard, subject to his findings on remand after further development of the record, in accordance with this Decision and Order.

### C. Whether the ALJ Erred in Failing to Assign Controlling Weight to the Opinion of Plaintiff's Treating Physician

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 14 at 10-19 [Def.'s Mem. of Law].)  The Court would only add the following analysis.

Under the "treating physician's rule," an ALJ must give controlling weight to the treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts.  20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, No. 11-2907, 2012 WL 2096630, at *1 (2d Cir. June 12, 2012).  The factors an ALJ should consider

when determining the proper weight of a treating physician's opinion include the following: (1) frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(d); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). Regulations require ALJs to set forth their reasons for the weight they assign to a treating physician's opinion. *Shaw*, 221 F.3d at 134.

Where, as here, the treating physician's opinion is not supported by, or consistent with, other evidence in the record, the ALJ is entitled to accord that opinion less than controlling weight, and may instead rely on the opinions of consultative examiners. *See Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 [2d Cir. 2004], and *Mongeur v. Heckler*, 722 F.2d 1033, 1039 [2d Cir. 1983]). Accordingly, the ALJ's decision is affirmed in this regard, subject to his findings on remand after further development of the record, in accordance with this Decision and Order.

### D.     Whether the ALJ Erred in Failing to Properly Assess Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 20-22 [Def.'s Mem. of Law].) The Court would only add the following analysis.

A Plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (Mordue, C.J., adopting Report-Recommendation of Bianchini, M.J.) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise

discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.*

Here, in addition to Plaintiff's testimony regarding her physical and psychological limitations, the ALJ considered the following: (1) each of Plaintiff's medications and her testimony that she believes they help her and cause no side effects; (2) Plaintiff's testimony regarding her participating in group counseling and elevating her feet to relieve her symptoms;

and (3) Plaintiff's testimony that she has constant pain in her knees, ankles and elbows that she described as numbing, but sometimes achy. (T. 16-18.) The ALJ appropriately considered these factors in evaluating Plaintiff's credibility. Accordingly, the ALJ's decision is affirmed in this regard, subject to his findings on remand after further development of the record, in accordance with this Decision and Order.

### E. Whether the ALJ Erred in Relying on the Vocational Expert's Testimony to Support his Finding that Plaintiff is not Disabled

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 25 [Def.'s Mem. of Law].) The Court would only add the following analysis.

Plaintiff argues that the ALJ's decision at step five, that there are jobs that exist in significant numbers in the national economy that she can perform, is necessarily erroneous because his underlying decisions regarding her RFC are not supported by substantial evidence. In rendering his decision at step five, the ALJ relied on the opinion testimony of a vocational expert that under a hypothetical set of facts which mirror Plaintiff's RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (T. 51-52.) Where substantial evidence supports the assumptions underlying a hypothetical, courts have found that the opinions formed on the basis of such a hypothetical satisfy the Commissioner's burden at step five of the sequential analysis. *See Edwards v. Astrue*, 07-CV-0898, 2010 WL 3701776, at *13 (N.D.N.Y. Sept. 16, 2010) (Mordue, C.J.) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 [2d Cir. 1983]). Here, based on the current record, the ALJ's hypothetical, and consequently, the vocational expert's opinion regarding the existence of jobs in the national economy, is based

on substantial evidence. Accordingly, the ALJ's decision is affirmed in this regard, subject to his findings on remand after further development of the record, in accordance with this Decision and Order.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED in part** and **DENIED in part** consistent with Parts IV.A. through IV.E. of this Decision and Order; and it is further is

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: September 20, 2012
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge